| 9 | 169 |
| 43a | 382 |

---

ROBERT (A MAN OF COLOR,) VS. MELUGEN.

1. A slave can only be emancipated in Missouri by an instrument of writing executed in accordance with the act of 1835.

2. The admissions, or declarations of a person holding another in slavery, as to the residence of the slave in Illinois, cannot be given, until a foundation for such testimony is laid by proof of such residence with the consent of the owner.

## APPEAL from Jasper Circuit Court.

TOMPKINS, J., delivered the opinion of the court.

Robert, a person of color, brought his suit for freedom, against Samuel Melugen, in the circuit court of Jasper county. Judgment being given against him there, he appealed to this court.

On the trial of the cause, evidence was given that James Pharis, then deceased, who had claimed the plaintiff as his slave, and of whom this defendant is administrator, had in his lifetime frequently said that he wished the plaintiff, Robert, to be free, because he had been a faithful slave; that he died from home, and that these declarations were made in his last sickness; and that he was prevented by those about him in his last sickness, from making a will. This evidence was excluded from the jury on the motion of the defendant, and the plaintiff excepted to the opinion of the court. The plaintiff then asked a witness to state what he had heard Pharis in his lifetime say about the plaintiff being a free man. The defendant objected to the question; the court sustained the objection, and the plaintiff excepted to this decision of the court. Another witness was asked by the plaintiff to tell what he had heard any one say in the presence of Pharis in his lifetime, about the plaintiff having been in the State of Illinois. This question was objected to by the defendant, and the plaintiff excepted to the opinion of the court sustaining the objection. The plaintiff then

Robert, (a man of color,) vs. Melugen.

took a non-suit, with leave to move to set it aside, and afterwards on the same day, did move to set it aside. His motion was overruled, and he excepted to the decision of the court overruling his motion.

The plaintiff rests his claim to reverse this judgment on two points:

1st. That Pharis, the intestate of the defendant in this action, had in his lifetime frequently declared his intention that Robert, the plaintiff, should be free after the death of him, the intestate, and was anxious to have made his will to that effect, but was prevented from doing so, by those attending in his last illness.

2d. That the plaintiff had acquired a right to freedom by a residence in the State of Illinois, with the consent of the intestate, which residence the plaintiff 's counsel in his brief states the plaintift offered to prove.

1. The act concerning slaves provides, that any person may emancipate his slave by last will, or any other instrument of writing, under hand and seal, attested by two witnesses, and proved in the circuit court of the county where he or she resides, or acknowledged by the party in the same court. Section 1st of article 2d, p. 587, of the Digest of 1835. The 5th section of that article provides, that every person emancipating a slave shall cause to be delivered to him a copy of the act of emancipation, attested by the clerk, and the seal of the court in which the act was proved or acknowledged. The sixth section of the same article provides that, "where the emancipation has been by last will, the executor or administrator of the testator, shall cause to be delivered a copy as is required by the last preceding section."

Thus it appears that in this State the act of emancipation must be by writing, executed as above mentioned. The court then committed no error in excluding from the jury all evidence of the declarations of the intestate, of his intention to emancipate the plaintiff, and of the circumstances which prevented him from doing so by his will.

2. The second point is, that the plaintiff offered to prove his right to freedom by a residence in the State of Illinois, with the intestate's consent, and proposed to ask these questions of the witnesses: "What Pharis, the intestate, had been heard to say in his lifetime of the plaintiff being a free man, and what the witness had ever heard said in the presence of said Pharis, in his lifetime, of the plaintiff being entitled to freedom, from his being in Illinois with Pharis' consent."

Here, it may be observed, that it does not appear on the bill of exceptions that the plaintiff offered to prove that he had ever resided in Illinois by the consent of the intestate, whose slave he appears to have been. Two witnesses were interrogated; the first was requested to

Robert (a man of color) vs. Melugen.

state what he had ever heard Pharis say in his lifetime about the plaintiff being a free man; the second was required to state what he had ever heard any one say in the presence of Pharis in his lifetime, about the plaintiff having been in the State of Illinois. What has been said on the first, is enough to show the absurdity of such a question as the first ; if, for instance, he becomes free in Missouri, the act by which he becomes free, should have been shown to the court, to-wit, the deed of emancipation, if he had been emancipated by the intestate in his lifetime ; or the will, if the emancipation was by will. Nothing can be more absurd than the question put to the second witness, viz : What he had heard said in the presence of the intestate in his lifetime about the plaintiff having been in the State of Illinois. The plaintiff might have gone into the State of Illinois without the consent of the intestate, as a runaway, or he might have accompanied the intestate on a journey through that State to Kentucky, or some other State. This court, in the case of Rennick vs. Chloe, said, that when a suitable foundation had been laid for such testimony, the admissions of a person holding another in slavery, that he or she is free, is undoubtedly, for many purposes, legitimate evidence, an opinion in which I entirely concur, and I then dissented from the court in the judgment rendered, only because I believe a suitable foundation had not been laid. In the case of Winny vs. Whitesides, 1 Mo. Rep. 334; Milly vs. Smith, 2 Mo. Rep. 32; and Vincent vs. Duncan, Ibid. 174, (top paging of new edition,) this court has, as the plaintiff's counsel states, decided, that if the owner of the slaves take them into Illinois, with intent to reside there, and do reside there, keeping the slaves, "they become free." What was wanting in the bill of exceptions, the plaintiff's counsel, with more ingenuity than candor, has supplied in the statement of the case in his brief, thus laying a foundation, which according to these decisions above cited, would have authorized the plaintiff to give in evidence either the direct or implied admissions of the intestate. But it does not appear from the bill of exceptions, that any pretence was made to prove a residence in Illinois by consent of the intestate or otherwise. The questions could not then be put, consistently with the spirit of the cases above cited.

The judgment of the circuit court is then affirmed.